## IN THE APPLICATION FOR REMOVAL OF AXEL B. DAHL, AN ATTORNEY AT LAW.[1]

June 13, 1924.

No. 23,092.

**Attorney disbarred for dishonesty.**

An attorney at law. who neglects to remit promptly, or at all, collections made for clients, who fails to answer inquiries of nonresident clients for whom he has made collections without remitting, and who makes misleading and false statements concerning collections made, thus necessitating the employment of other attorneys by the clients to collect from him, forfeits his right to practice and should be removed from his office.

Complainants having petitioned for the disbarment of Axel B. Dahl as an attorney at law of the state of Minnesota, V. C. Pidgeon, Esq., secretary of the board of law examiners, was appointed by the supreme court to present the evidence in support of the accusation. Further proceedings are mentioned at the beginning of the opinion. Respondent disbarred.

*Harold G. Cant,* for petitioners.

*Victor L. Power, M. H. McMahon* and *S. S. Dahl,* for respondent.

PER CURIAM. -

In this application for the disbarment of Axel B. Dahl, Honorable C. W. Stanton, a judge of the district court, was duly appointed referee to take the evidence and find the facts in respect to

[1]Reported in 199 N. W. 429.

the charges of misconduct made against the respondent Dahl. Upon the report and findings of the referee, oral arguments were presented on May 15, 1924, in this court, by Harold G. Cant in behalf of the board of law examiners and by respondent in person.

An attentive examination of the evidence leads to the conclusion that the findings of the referee are amply supported. They are lengthy and go into detail concerning transactions in which respondent was accused of misconduct towards his clients. Abbreviated they are as follows:

1.  A collection of $21.70 was made for a client in Pennsylvania in December, 1921. No report or remittances were made until a check was sent June 9, 1922, for the full amount without deduction of any collection fees, but the check was dishonored for want of funds. However, on September 22, 1922, it was paid. In regard to this collection the finding is that respondent negligently failed to respond to letters of inquiry sent by the client and negligently failed to make reasonably prompt remittance.

2.  An attorney in Michigan sent a claim of $61.14 to respondent to collect. Respondent garnisheed the wages of the debtor and obtained $54.70, but has never accounted for or remitted any part thereof.

3.  He collected, between June 25, 1918, and July 14, 1919, five notes of ten dollars each given by a woman for the purchase of a piano and never remitted to his client, but wilfully and purposely misrepresented the fact that he had made any collection by writing such client on October 15, 1919, in reference to this claim "promises are about all I have been able to obtain from this party."

4.  Respondent took over from attorneys who left for army service a workman's compensation claim for one Aku Laitinen, and in the last days of January, 1919, received $463 in a draft from the insurance company which had insured the employer payable to Laitinen. This draft, apparently indorsed by the payee, was left with respondent, who deposited it to his own credit in the bank on February 5, 1919, and afterwards appropriated the proceeds to his own use. Aku Laitinen often sought information as to the status of his claim, but respondent disclaimed that a settlement

had been effected until the spring of 1922, when Laitinen, learning that the insurance company had paid the money to respondent, placed the matter in the hands of other attorneys, who sued respondent. He defaulted; judgment was entered for $562.61 on April 29, 1922, and upon execution $379.09 was collected July 29, 1922. The balance was paid by respondent June 7, 1923.

5. In April, 1921, one Schweiger bought a bakery at Keewatin from one Grcevich for $2,500. Both were foreigners and inexperienced. They came to respondent for assistance and the purchaser placed $2,300 in the hands of respondent to first pay therefrom all just claims against the seller arising out of the prior operation of the bakery and then pay the rest, if any, to the seller. This money respondent merged with his own funds, and on April 14, 1921, paid $484.80 to one of the seller's creditors, "and at some later date, not satisfactorily disclosed by the evidence, paid $1,200 to the seller," so that respondent now has in his possession $615.20 of the fund so entrusted to him. On April 26, 1921, respondent was notified that a milling company of Kensington, Minnesota, had a claim of $650 for flour sold Grcevich that it wished to place in the hands of an attorney. Respondent wired the company that he would collect it for a 20 per cent commission, or fee. The company accepted the proposition. On May 27, 1921, respondent wrote the company that he would have to begin an action, and inclosed two blank verifications, requesting the same to be executed and returned. This was declined. Subsequently the claim of the company appears to have been transferred to another corporation which went into the hands of a receiver. The receiver on September 8, 1922, brought an action against respondent to recover said sum of $650 and interest, alleging that respondent had collected the same from Grcevich and had promised to pay it over, but had neglected to do so. Respondent defaulted and judgment was rendered on September 29, 1922, for $709.89 which is still unpaid, except $200 obtained under an execution levied upon respondent's salary.

The above facts so clearly demonstrate respondent's unfitness to continue to practice his profession that comment is, perhaps, unnecessary. Clients are entitled not only to have their claims prose-

cuted diligently and skilfully by the attorney to whom they are entrusted, but to receive prompt remittance when collected, and assuredly without the necessity of employing other attorneys to collect from the attorney first engaged.

It should be said that in his testimony as well as in the oral argument respondent sought to excuse failure to remit or settle with the clients on the ground that he thought he had remitted, or forgot that he had collected. These excuses do not bear scrutiny. The first item above referred to was continually called to his attention by the client without receiving any response until the time his conduct came before the board of law examiners for investigation. If the check for claim number 3 herein was sent, it should have been easy for respondent to have proved it, or to satisfy himself that it never reached its destination and arrange for paying by duplicate. He does not claim that it has been paid. It is not likely that a young lawyer will forget having received a collection of nearly $500 deposited by him to the credit of his personal account in the bank; at least, when the importunate client is repeatedly inquiring about its collection. And, when, as he admits, he finally discovered that he had received the money, instead of making prompt amends, he delays until suit is started and judgment entered, which could not be fully enforced until more than a year after its rendition. Respondent presents a somewhat plausible reason for not remitting for the claim of the mill company against Grcevich, namely, that he had not sufficient money in his hands for that purpose and that Grcevich disputed part of the claim, but, unfortunately for respondent, his default when sued is a confession that he had collected the claim or should have paid it out of the money left in his hands to discharge the claims against Grcevich. The facts found, and the correctness of which cannot be doubted, require that respondent be disbarred for the protection of the public and the profession which he has dishonored.

The findings of the referee are approved and adopted, and as conclusion of law respondent is found guilty of misconduct in the practice of his profession as an attorney at law and it is ordered that the respondent be removed from his said office, and formal judgment of disbarment entered.